[No. 64838-1-I.   Division One.   March 14, 2011.]

THE CITY OF AUBURN, *Petitioner*, v. DUSTIN B. GAUNTT, *Respondent*.

568

*Daniel B. Heid, City Attorney*, for petitioner.
*David R. Kirshenbaum*, for respondent.

¶1 GROSSE, J. — When, as here, a crime adopted under state law has not been expressly adopted by city code or incorporated in the city code by reference to state statute, and no other state statute confers authority to prosecute that misdemeanor in municipal court, the city lacks authority to prosecute it in the municipal court. Accordingly, we affirm the decision on RALJ appeal reversing the trial court and remanding for dismissal of the charges.

## FACTS

¶2 The city of Auburn (City) charged Dustin Gauntt with one count of possession of less than 40 grams of marijuana and one count of unlawful use of drug paraphernalia. According to the police report, Auburn police officers saw Gauntt driving within the Auburn city limits using a pipe to smoke what appeared to be marijuana. They stopped his vehicle, confirmed their suspicions, and issued him a citation for possession of marijuana and use of drug paraphernalia.

¶3 Before trial, Gauntt moved to dismiss both charges on the basis that the City did not have authority to prosecute these crimes because the City had not adopted the state statute under which he was charged or adopted a comparable ordinance. The complaint on the charge of unlawful

use of drug paraphernalia states that Gauntt committed the crime:

> Contrary RCW 69.50.412(1) or (2) charged pursuant to the authority vested by RCW 39.34.180 and the Auburn City Code 9.22.020[(A)]. and against the peace and dignity of the City of Auburn;
>
> **Maximum Penalty:**  90 days in jail and/or a $1000 fine.
>
> **Mandatory Minimum Penalty:** First Offense – 90/89 and $250.00 fine and $50.00 to the Drug Fund
>
> Second Offense – 90/89 and $500.00 fine and $50.00 to the Drug Fund

The complaint on the marijuana possession charge states that Gauntt committed the crime:

> Contrary to RCW 69.50.4014 and the Auburn City Code and against the peace and dignity of the State of Washington.
>
> **Maximum Penalty:**  90 days in jail and/or a $1000 fine.
>
> **Mandatory Minimum Penalty:**  First Offense – 1 day in jail and $250.00 fine and $50.00 to the Drug Fund
>
> Second or Subsequent Offense – 1 day in jail and $500.00 fine and $50.00 to the Drug Fund

¶4 Gauntt contended that while the City had adopted ordinances prohibiting marijuana possession and use of drug paraphernalia,[1] it had not adopted the mandatory minimum penalties for these crimes provided by the state statute under which he was charged.[2] The City agreed that its code did not provide for the mandatory minimum penalties but contended that it still had authority to prosecute the crimes and seek these penalties under the state statute and in-

---

[1] *See* Auburn City Code (ACC) 9.22.010 and ACC 9.22.020.

[2] *See* RCW 69.50.425 (providing for minimum penalties for violations of chapter 69.50 RCW).

tended to proceed under state law. The trial court denied the motion to dismiss and Gauntt proceeded to a bench trial, stipulating to the facts contained in the police report. The trial court entered a finding of guilty of both charges.

¶5 Gauntt filed a RALJ appeal in superior court, again contending that the City had no authority to prosecute the crimes under state law because the state statute had not been adopted by the City. The superior court agreed, reversing the trial court and remanding for dismissal of the charges with prejudice. The court's decision on the RALJ appeal ordered:

> The City may not enforce state law without having first adopted the state law by reference or having adopted a compatible ordinance. Since the defendant was prosecuted for a crime not adopted by the City, the findings of guilty [are] hereby set aside and this case is remanded to the Auburn Municipal Court for dismissal.

The City moved for discretionary review, which was granted by this court.

## ANALYSIS

¶6 The City contends that the RALJ decision was in error because the City has the authority to prosecute all misdemeanors committed within city limits, not just those expressly adopted by ordinance or incorporated by reference to the state statute. The City asserts that RCW 39.34.180 gives the City the authority to prosecute any misdemeanor committed within its jurisdiction, whether charged under state or city law. We disagree.

■ ■ ¶7 Municipal courts are creatures of the legislature.[3] As a court of limited jurisdiction, a municipal court may exercise only the jurisdiction affirmatively granted by the legislature, which has the sole authority to define the jurisdiction of such courts.[4] RCW 3.50.020 defines the jurisdiction of municipal courts and provides:

---

[3] *City of Seattle v. Briggs*, 109 Wn. App. 484, 488-89, 38 P.3d 349 (2001).

[4] *City of Medina v. Primm*, 160 Wn.2d 268, 273, 157 P.3d 379 (2007).

> The municipal court shall have exclusive original jurisdiction over traffic infractions arising under city ordinances and exclusive original criminal jurisdiction of all violations of city ordinances duly adopted by the city and shall have original jurisdiction of all other actions brought to enforce or recover license penalties or forfeitures declared or given by such ordinances or by state statutes. A hosting jurisdiction shall have exclusive original criminal and other jurisdiction as described in this section for all matters filed by a contracting city. The municipal court shall also have the jurisdiction as conferred by statute. The municipal court is empowered to forfeit cash bail or bail bonds and issue execution thereon; and in general to hear and determine all causes, civil or criminal, including traffic infractions, arising under such ordinances and to pronounce judgment in accordance therewith. A municipal court participating in the program established by the administrative office of the courts pursuant to RCW 2.56.160 shall have jurisdiction to take recognizance, approve bail, and arraign defendants held within its jurisdiction on warrants issued by any court of limited jurisdiction participating in the program.

Thus, the municipal court has jurisdiction over criminal actions arising under the city code and "as conferred by state statute."

¶8 The Auburn City Code permits the City to prosecute crimes committed within city limits that violate its code.[5] The city code also allows the City to prosecute crimes under state law when the City specifically adopts by reference the state statute:

> Statutes of the state of Washington specified herein and as specified in ordinances codified in this title are adopted by reference as and for a portion of the penal code of the city of Auburn, as if set forth in full, including the criminal/offense classification and penalty provisions applicable thereto unless

---

[5] ACC 9.02.020 ("Any person who commits within the corporate limits of the city any crime that is a violation hereof, in whole or in part, or a violation the prosecution of which is the responsibility of the city pursuant to RCW 39.34.180, is liable to arrest and punishment."); ACC 9.02.030(A) ("An offense defined by this code, for which a sentence of imprisonment is authorized, constitutes a 'violation of city ordinance' and a 'crime.' ").

a different classification and/or penalty is specifically provided for the particular sections of state statutes adopted by reference; provided, that the adoption of state statutes by reference shall not be construed or interpreted to vest in the city any authority or responsibility to prosecute felony offenses, and the adoption of state statutes which include felony provisions shall be limited to those provisions falling within the city's authority, and such adoption, and the provisions being adopted, shall be construed and interpreted in accordance with the lawful authority of the city. (Ord. 5682 § 1, 2002.)[6]

The statutes incorporated by reference are listed in sections 9.02.900 and 9.22.900 of the city code.[7]

¶9 The City concedes that the crimes charged here are not violations of city ordinance and have not been adopted by reference to the state statute but contends that it has authority to prosecute them as "conferred by state statute." The City relies on RCW 39.34.180, which is part of the Interlocal Cooperation Act[8] and addresses "[c]riminal justice responsibilities"[9] between the various local jurisdictions. The statute provides in part:

> (1) Each county, city and town is responsible for the prosecution, adjudication, sentencing, and incarceration of misdemeanor and gross misdemeanor offenses committed by adults in their respective jurisdictions, and referred from their respective law enforcement agencies, whether filed under state law or

---

[6] ACC 9.02.110. The city code also provides for "[c]itation reference to sections adopted by reference" as follows:

> In any citation, complaint, notice of violation or other pleading filed in a court of competent jurisdiction or in any other forum, reference to the section or sections of state statutes adopted by reference as a part of the city code shall be by the same number identifying the section in the Revised Code of Washington. Such reference shall refer to and mean the appropriate section of the Auburn City Code adopted by reference from the Revised Code of Washington. (Ord. 5682 § 1, 2002.)

ACC 9.02.120 (emphasis omitted).

[7] ACC 9.02.900 lists statutes incorporated by reference relating general principles of criminal liability; ACC 9.22.900 lists statutes incorporated by reference relating to controlled substances.

[8] Ch. 39.34 RCW.

[9] (Emphasis omitted.)

city ordinance, and must carry out these responsibilities through the use of their own courts, staff, and facilities, or by entering into contracts or interlocal agreements under this chapter to provide these services. Nothing in this section is intended to alter the statutory responsibilities of each county for the prosecution, adjudication, sentencing, and incarceration for not more than one year of felony offenders, nor shall this section apply to any offense initially filed by the prosecuting attorney as a felony offense or an attempt to commit a felony offense.

. . . .

(5) For cities or towns that have not adopted, in whole or in part, criminal code or ordinance provisions related to misdemeanor and gross misdemeanor crimes as defined by state law, this section shall have no application until July 1, 1998.[10]

The City contends that the language "whether filed under state law or city ordinance" gives the City the authority to prosecute any misdemeanor committed within its jurisdiction, not just those expressly adopted by ordinance or incorporated by reference to the state statute. We disagree.

¶10 When the meaning of statutory language is plain on its face, courts must give effect to that plain meaning as an expression of legislative intent.[11] Looking at the plain meaning of this statutory language, it simply refers to charges *"filed* under state law or city ordinance,"[12] not *adopted* under state law or city ordinance. By doing so, this assumes that a city already has the authority to file charges for the offense; nowhere does the statute grant a city the authority to prosecute all misdemeanors regardless of whether or not these offenses have been adopted by city

---

[10] The city code also provides, "Any person who commits within the corporate limits of the city any crime that is a violation hereof, in whole or in part, or a violation the prosecution of which is the responsibility of the city pursuant to RCW 39.34.180 is liable to arrest and punishment." ACC 9.02.020.

[11] *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 536, 199 P.3d 393 (2009).

[12] RCW 39.34.180(1) (emphasis added).

code, as the City contends.[13] This makes sense, given the statute's purpose, which is to apportion responsibility between different jurisdictions *when* they have the authority to prosecute the same crimes and to allow government entities to enter into interlocal agreements to allocate financial responsibility for the prosecution of these crimes. As the court in *City of Medina v. Primm* recognized, the purpose of the Interlocal Cooperation Act is the efficient allocation of existing powers of local governments:

> The purpose of the Interlocal Cooperation Act is
>
> to permit local governmental units to make the most efficient *use of their powers* by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors[14]

Additionally, the Interlocal Cooperation Act contemplates contracts among local entities for only those services they are already authorized to perform, as provided in RCW 39.34.080:

> Any one or more public agencies may contract with any one or more other public agencies to perform any governmental service, activity, or undertaking *which each public agency entering into the contract is authorized by law to perform*: PROVIDED, That such contract shall be authorized by the governing body of each party to the contract.[15]

Thus, RCW 39.34.180 does not confer any authority upon cities with respect to the adoption of crimes; it simply defines the responsibility of a city when it has authority to charge crimes that are also violations of state law.

---

[13] In fact, the City code requires that any citation or complaint for a violation of a state statute adopted by reference as part of the city code must refer to the RCW section, which would amount to "filing under state law." *See* ACC 9.02.120.

[14] 160 Wn.2d 268, 276, 157 P.3d 379 (2007) (emphasis added and omitted) (quoting RCW 39.34.010).

[15] (Emphasis added.)

██ ¶11 Additionally, as Gauntt points out, had the legislature intended to grant such authority to municipal courts created under chapter 3.50 RCW, which applies to cities such as Auburn with a population less than 400,000,[16] it would have expressly done so. In fact, it has done so for municipal courts created under chapter 35.20 RCW, which applies to cities with populations over 400,000.[17] Under RCW 35.20.250, such municipal courts "shall have concurrent jurisdiction with the superior court and district court in all civil and criminal matters," and this has been held to include all misdemeanor violations of state law, regardless of whether a city has an ordinance expressly granting municipal court jurisdiction over state crimes.[18] But there is no comparable provision under chapter 3.50 RCW, the statute under which Auburn's Municipal Court was created.[19] Thus, this omission presumes a legislative intent that such a provision does not apply to municipal courts created under chapter 3.50 RCW, including that of Auburn.[20]

¶12 We affirm the superior court's order on RALJ appeal reversing the Auburn Municipal Court and remanding for dismissal of the charges.

BECKER and COX, JJ., concur.

Review granted at 172 Wn.2d 1004 (2011).

---

[16] RCW 3.50.010.

[17] RCW 35.20.010(1).

[18] See Briggs, 109 Wn. App. at 490.

[19] See ACC 2.14.020(A) ("The municipal court . . . shall exercise all powers enumerated in this chapter and in [c]hapter 3.50 of the Revised Code of Washington . . . .").

[20] See Landmark Dev., Inc. v. City of Roy, 138 Wn.2d 561, 571, 980 P.2d 1234 (1999) (recognizing "the judicial doctrine expressio unius est exclusio alterius: the expression of one is the exclusion of the other").